IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 3:23-cr-00054 |
| v. | **PLEA AGREEMENT** |
| JOSEPH KOFFIE KORHA, | |
| Defendant. | |

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Mac Schneider, United States Attorney for the District of North Dakota, Megan A. Healy, Assistant United States Attorney, David A. Hubbert, Deputy Assistant Attorney General, United States Department of Justice, Tax Division, and Dominick Giovanniello, Trial Attorney, United States Department of Justice, Tax Division; Defendant, JOSEPH KOFFIE KORHA; and Defendant's counsel, Christopher Bellmore, agree to the following:

1.    Defendant acknowledges the Superseding Indictment charges violations of Title 26, United States Code, Section 7206(2).

2.    Defendant has read the charges and Defendant's attorney has fully explained the charges to Defendant.

3.    Defendant fully understands the nature and elements of the charged crimes.

4.    Defendant will voluntarily plead guilty to Counts One, Four, Five, Seven, and Eleven of the Superseding Indictment.

1

5.      The parties agree this Plea Agreement shall be filed as part of the Court

record and be governed by Federal Rule of Criminal Procedure 11(c). The parties

specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the

non-binding recommendations specified in this Plea Agreement, then Defendant

acknowledges that this agreement will have been fulfilled. Except as provided in

Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does

not give Defendant a right to withdraw Defendant's guilty plea.

6.      Defendant will plead guilty to Counts One, Four, Five, Seven, and

Eleven of the Superseding Indictment because Defendant is in fact guilty of the

charges. In pleading guilty to the Superseding Indictment, Defendant

acknowledges that:

At all times relevant to the Superseding Indictment, Defendant Joseph Koffie Korha worked for Aaronic Tax Service, also known as G and G Tax Pro, a business located in Phoenix, Arizona. Defendant held himself out as a tax professional and charged clients a fee for the preparation of tax returns. For Tax Year 2018, Defendant prepared and filed individual income tax returns using Form 1040, which is an Internal Revenue Service ("IRS") form wherein taxpayers report items including income, certain expenses, credits, deductions, and tax. Related to Counts One, Four, Five, Seven, and Eleven, Defendant submitted electronically such forms to the IRS on behalf of clients. All such electronic submissions involved an interstate transfer of such forms and associated documents via a wire from North Dakota to an IRS Service Center outside the state of North Dakota.

Defendant did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS of United States Individual Income Tax Returns, Forms 1040, either individual or joint, for the taxpayers and tax years identified in Counts One, Four, Five, Seven, and Eleven of the Superseding Indictment. The returns were false and fraudulent as to material matters, as specified below.

Count One: Taxpayers K.T. and S.T. hired Defendant to prepare their 2018 federal income tax return. K.T. and S.T. provided Defendant with Forms W-2 for each of

2

them and information related to their minor child. Defendant completed and filed electronically with the IRS a Form 1040 on behalf of K.T. and S.T. on or around February 3, 2019. Defendant willfully included the false and fraudulent items identified below on this Form 1040.

Defendant falsely claimed on Line 6 a loss of $24,149. This false loss resulted from fraudulent claims on Schedules C, *Profit or Loss From Business*, that S.T. owned or operated a "Beauty Salons" business that lost $11,955 in 2018 and that K.T. owned or operated a "Landscaping Svcs" business that lost $12,194 in 2018. S.T. did not own or operate a beauty salon in 2018 and did not discuss such a business with Defendant. K.T. did not own or operate a landscaping services business in 2018 and did not discuss such a business with Defendant.

Defendant falsely claimed on Line 12 a Nonrefundable Education Credit of $633 and on Line 17c an American Opportunity Credit of $2,000. These false items relate to fraudulent claims on Form 8863, *Education Credits*. Form 8863 falsely claimed that both K.T. and S.T. attended "NDSU" in 2018. Neither K.T. nor S.T. attended NDSU or any other college in 2018 and did not discuss this with Defendant.

The false claims on Lines 6 and 12 resulted in false claims Line 17a for an Earned Income Credit of $2,506 and on Line 17b for an Additional Child Tax Credit of $1,400. K.T. and S.T. would not have been eligible for these credits without the false claims on Lines 6 and 12.

Count Four: Taxpayer Z.T. hired Defendant to prepare his 2018 federal individual income tax return. Z.T. provided Defendant with Forms W-2. Defendant completed and filed electronically with the IRS a Form 1040 on behalf of Z.T. on or around February 19, 2019. Defendant willfully included the false and fraudulent items below on this Form 1040.

Defendant falsely claimed on Line 6 a loss of $9,080. This false loss resulted from a fraudulent claim on Schedule C, *Profit or Loss From Business,* that Z.T. owned or operated a "Barber Shops" business that lost $9,080 in 2018. Z.T. did not own or operate a barber shop business in 2018 and did not discuss such a business with Defendant.

Defendant falsely claimed on Line 12 a Nonrefundable Education Credit of $1,500 and on Line 17c an American Opportunity Credit of $1,000. These false items related to fraudulent claims on Form 8863, *Education Credits*. Form 8863 falsely claimed that Z.T. attended "M State" in 2018. Z.T. did not attend M State or any other college in 2018 and did not discuss this with Defendant.

Count Five: Taxpayer G.S. hired Defendant to prepare his 2018 federal individual

3

income tax return. G.S. provided Defendant with Forms W-2. Defendant completed and filed electronically with the IRS a Form 1040 on behalf of G.S. on or around February 20, 2019. Defendant willfully included the false and fraudulent items below on this Form 1040.

Defendant falsely claimed on Line 6 a loss of $8,981. This false loss resulted from a fraudulent claim on Schedule C, *Profit or Loss From Business*, that G.S. owned or operated a "Janitorial Svcs" business that lost $8,981 in 2018. G.S. did not own or operate a janitorial services business in 2018 and did not discuss such a business with Defendant.

Defendant falsely claimed on Line 12 a Nonrefundable Education Credit of $723 and on Line 17c an American Opportunity Credit of $1,000. These false items related to fraudulent claims on Form 8863, *Education Credits*. Form 8863 falsely claimed that G.S. attended "Rasmussen College Minnesota" in 2018. G.S. did not attend Rasmussen College or any other college in 2018 and did not discuss this with Defendant.

Count Seven: Taxpayer P.W. hired Defendant to prepare his 2018 federal individual income tax return. P.W. provided Defendant with Forms W-2 and information related to his minor nephew. Defendant completed and filed electronically with the IRS a Form 1040 on behalf of P.W. on or around March 7, 2019. Defendant willfully included the false and fraudulent items below on this Form 1040.

Defendant falsely claimed on Line 6 a loss of $8,837. This false loss resulted from a fraudulent claim on Schedule C, *Profit or Loss From Business*, that P.W. owned or operated a "Janitorial Svcs" business that lost $8,837 in 2018. P.W. did not own or operate a janitorial services business in 2018 and did not discuss such a business with Defendant.

Defendant falsely claimed on Line 12 a Nonrefundable Education Credit of $778 and on Line 17c an American Opportunity Credit of $1,000. These false items related to fraudulent claims on Form 8863, *Education Credits*. Form 8863 falsely claimed that P.W. attended "M State" in 2018. P.W. did not attend M State or any other college in 2018 and did not discuss this with Defendant.

The false claims on Lines 6 and 12 resulted in false claims on Line 17a for an Earned Income Credit of $2,324 and on Line 17b for an Additional Child Tax Credit of $1,400. P.W. would not have been eligible for these credits in these amounts without the false claims on Lines 6 and 12.

Count Eleven: Taxpayer G.B. hired Defendant to prepare her 2018 federal individual income tax return. G.B. provided Defendant with Forms W-2 and information related to her minor children. Defendant completed and filed electronically with the IRS

4

a Form 1040 on behalf of G.B. on or around March 11, 2019. Defendant willfully included the false and fraudulent items below on this Form 1040.

Defendant falsely claimed on Line 6 a loss of $9,108. This false loss resulted from a fraudulent claim on Schedule C, *Profit or Loss From Business*, that G.B. owned or operated a "Beauty Salons" business that lost $9,108 in 2018. G.B. did not own or operate a beauty salon in 2018 and did not discuss such a business with Defendant.

Defendant falsely claimed on Line 12 a Nonrefundable Education Credit of $778 and on Line 17c an American Opportunity Credit of $1,000. These false items related to fraudulent claims on Form 8863, *Education Credits*. Form 8863 falsely claimed that G.B. attended "M State" in 2018. G.B. did not attend M State or any other college in 2018 and did not discuss this with Defendant.

The false claims on Lines 6 and 12 resulted in false claims on Line 17a for an Earned Income Credit of $4,218 and on Line 17b for an Additional Child Tax Credit of $1,400. G.B. would not have been eligible for these credits in these amounts without the false claims on Lines 6 and 12.

### Relevant Conduct

In addition to the twelve counts identified in the Superseding Indictment, Defendant willfully aided in the preparation and filing of at least 111 fraudulent tax returns for tax years 2017 through 2018, which contained, among other items, fraudulent Schedule C losses, fraudulent Education Credits, and fraudulent Earned Income and Additional Child Tax Credits. In total, Defendant caused a tax loss of $294,000, as detailed in the following table:

|  | Tax Loss |
|---|---|
| Counts of Conviction | $20,479.00 |
| Relevant Conduct | $273,521.00 |
| **Total** | $294,000.00 |

Defendant acknowledges the facts set forth above establish all the elements of 26

U.S.C. § 7206(2) as charged in the Superseding Indictment. Defendant also

acknowledges this Court has jurisdiction over this matter.

7.   Defendant understands the following maximum penalties apply:

Imprisonment:          3 years
Fine:                        $250,000

5

Supervised Release:      1 year
Special Assessment:      $100

Defendant agrees to pay the Clerk of United States District Court the special assessment
on or before the day of sentencing.

    8.    Defendant understands that by pleading guilty Defendant surrenders rights,
including:

    (a)    The right to a speedy public jury trial and related rights as follow:

    (i)    A jury would be composed of twelve (12) lay persons
selected at random. Defendant and Defendant's attorney would help choose
the jurors by removing prospective jurors "for cause," where actual bias or
other disqualification is shown; or by removing jurors without cause by
exercising so-called peremptory challenges. The jury would have to agree
unanimously before it could return a verdict. The jury would be instructed
that Defendant is presumed innocent and that it could not return a guilty
verdict unless it found Defendant guilty beyond a reasonable doubt.

    (ii)    If a trial were held without a jury, then the Judge would find
the facts and determine whether Defendant was guilty beyond a reasonable
doubt.

    (iii)    At a trial, whether by a jury or Judge, the United States is
required to present witness testimony and other evidence against
Defendant. Defendant's attorney can confront and examine them. In turn,
the defense can present witness testimony and other evidence. If witnesses

6

for Defendant refuse to appear voluntarily, Defendant can require their

attendance through the subpoena power of the Court.

(iv)    At trial, Defendant has a privilege against self-incrimination;

thus, Defendant can decline to testify. No inference of guilt can be drawn

from Defendant's refusal to testify. Defendant can choose to testify but

cannot be required to testify.

(b)    Defendant has a right to remain silent. However, under terms of the

Plea Agreement, the Judge will likely ask Defendant questions about Defendant's

criminal conduct to ensure that there is a factual basis for Defendant's plea.

9.    Defendant understands that by pleading guilty Defendant is giving up all the

rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has

explained those rights, and consequences of Defendant's waiver.

10.    The Court shall impose a sentence sufficient to comply with purposes set

forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth

in 18 U.S.C. § 3553(a) and must consult and consider the United States Sentencing

Commission, Guidelines Manual ("USSG") in effect at the time of sentencing.

Defendant understands that the United States Attorney's Office will fully apprise the

District Court and the United States Probation and Pretrial Services Office of the nature,

scope, and extent of Defendant's conduct, including all matters in aggravation and

mitigation relevant to the issue of sentencing. The United States expressly reserves the

right to appeal from an unreasonable sentence.

11.    This Plea Agreement is binding only upon the United States Attorney for

the District of North Dakota and the United States Department of Justice, Tax Division.
It does not bind any United States Attorney outside the District of North Dakota, nor
does it bind any state or local prosecutor. They remain free to prosecute Defendant for
any offenses under their jurisdiction. This Plea Agreement also does not bar or
compromise any civil or administrative claim.

12.     Defendant understands the United States Attorney reserves the right to
notify any local, state, or federal agency by whom Defendant is licensed, or with whom
Defendant does business, of Defendant's conviction.

13.     The parties agree that the base offense level under the Sentencing
Guidelines for Defendant's conduct is 18. (USSG §§ 2T1.4, 2T4.1).

- Defendant agrees the tax loss, including relevant conduct, is $294,000,
  which corresponds to a base offense level of 18 under USSG §§
  2T1.4(a)(2) and 2T4.1(G).

14.     The parties agree that the following upward adjustments are applicable in
this case:

- +2 (USSG § 2T1.4(b)(1)(B)). Defendant was in the business of preparing
  or assisting in the preparation of tax returns.

15.     Defendant may be eligible for a 2-level downward adjustment under USSG
§ 4C1.1 ("Adjustment for Certain Zero-Point Offenders"). If Korha meets the criteria
under that section, the United States will not oppose a 2-level downward adjustment
under that guideline.

16.     At sentencing, United States agrees to recommend a 2-level downward

8

adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a).) The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b).)

17.     Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the Sentencing Guidelines' Commission to justify the departure. Both parties reserve the right to object to any departure. See USSG § 1B1.1, comment. (n.1) (defines "departure"). There may be other adjustments the parties have not agreed upon.

18.     At sentencing, the United States will:

(a)     Recommend a sentence at the low end of the applicable Guideline range;

(b)     Recommend a period of supervised release;

(c)     Move to dismissing the remaining counts of the Superseding Indictment.

19.     In exchange for the concessions made in this Plea Agreement, the United States agrees not to bring additional criminal charges for violations of 26 U.S.C. § 7206 arising from the same course of conduct charged in the Superseding Indictment.

20.     **Restitution**.

(a)     Pursuant to 18 U.S.C. § 3663(a)(3) and 18 U.S.C. § 3663A, Defendant

agrees to pay restitution to the IRS as determined by the Court at or before sentencing. Defendant agrees to pay restitution for his criminal conduct involving the preparation and filing of false and fraudulent tax returns, including both conduct charged in the Superseding Indictment and relevant conduct. Defendant agrees that restitution will not be limited to losses stemming from the offenses of conviction alone. Defendant agrees to pay restitution for all losses caused by Defendant's criminal conduct, regardless of whether counts of the Superseding Indictment will be dismissed or additional charges not brought as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

(b)     Pursuant to 18 U.S.C. § 3663(a)(3) and 18 U.S.C. § 3663A, Defendant also agrees to pay restitution to his client victims in an amount to be determined by the Court. Such restitution is not limited to the offenses of conviction or to the charged conduct, but rather includes all relevant conduct. The Court may also order such restitution as a condition of supervised release pursuant to 18 U.S.C. § 3583(d), and Defendant agrees to pay such restitution.

(c)     Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately

10

enforce the judgment in full.

      (d)    Defendant agrees to submit restitution payments via check or money order

to the Clerk of Court at:

> Clerk of Court, United States District Court
> Quentin N. Burdick U.S. Courthouse
> 655 1st Ave. North, #130
> Fargo, ND 58102-4932

Defendant agrees to include his name and district court case number—No. 3:23-cr-

00054—on all payments.

      The parties agree the Clerk of Court will disburse restitution payments to the IRS

at the following address:

> IRS RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Avenue
> Kansas City, Missouri 64108

    21.   **Restitution-Based Civil Assessment.**

      (a)    Defendant understands that if the Court orders the defendant to pay

restitution to the IRS, either directly as part of the sentence, or as a condition of

supervised release or probation, the IRS will use the restitution order as the basis for a

civil assessment. See 26 U.S.C. § 6201(a)(4)(A). Neither the existence of a restitution

payment schedule nor the defendant's timely payment of restitution according to that

schedule will preclude the IRS from immediately collecting the full amount of the

restitution-based assessment, including by levy and distraint under 26 U.S.C. § 6331.

Interest on the restitution-based assessment will accrue under 26 U.S.C. §§ 6601 and

6621 from the last date prescribed for payment of the liability that is the subject of the

restitution order to the date that the IRS receives payment.

     (b)    Defendant further understands that neither this agreement, nor any judgment, order, release, or satisfaction issued in connection with this agreement, will satisfy, settle, or compromise the Defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, or interest or penalties, owed to the IRS for the time periods covered by this agreement or for any other time period.

     22.    Defendant agrees, as part of this Plea Agreement, to be permanently enjoined under Internal Revenue Code §§ 7402 and 7407, from preparing or filing federal tax returns for anyone other than himself. Defendant understands that the United States will file a civil complaint against him seeking this relief, and Defendant agrees to consent to a permanent injunction.

     23.    Defendant acknowledges and understands that if Defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and Defendant will face the following consequences: (1) all testimony and other information Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against Defendant and to use any information obtained directly or indirectly from Defendant in

12

those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

24.     The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

25.     **Defendant's Waiver of Appeal.** Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby knowingly and voluntarily waives these rights, except as specifically reserved herein. Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack: Defendant's conviction or sentence; all non-jurisdictional issues; any assessment, restitution or forfeiture order; the constitutionality of the applicable guidelines; and the constitutionality of the statute(s) to which Defendant is pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence

13

based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver.

26.     By signing this Plea Agreement, Defendant further specifically waives Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. Defendant agrees that any attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

27.     Defendant understands that by pleading guilty he will be convicted, and that any individual convicted who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of his guilty plea.

28.     The Assistant United States Attorney and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

29.     Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

14

AGREED:

MAC SCHNEIDER
United States Attorney

Dated: 2/9/2024

By: MEGAN A. HEALY
Assistant United States Attorney

DAVID HUBBERT
Deputy Assistant Attorney General

Dated: 2/7/2024

By: DOMINICK GIOVANNIELLO
Trial Attorney, Tax Division

Dated: 02/02/2024

JOSEPH KOFFIE KORHA
Defendant

Dated: 2/2/24

CHRISTOPHER BELLMORE
Attorney for Defendant

15